**COMMONWEALTH of Kentucky, Appellant,**

v.

**Eugene SMITH and Richard A. Roberts, Appellee.**

No. 93–CA–002827–MR.

Court of Appeals of Kentucky.

Feb. 17, 1995.

As Modified May 12, 1995.

Chris Gorman, Atty. Gen., C. Lloyd Vest, II, Mary Jo Wicker, Sp. Asst. Attys. Gen., Frankfort, for appellant.

Frank W. Heft, Jr., Daniel T. Goyette, Louisville, for appellee Roberts.

Scott Wilson, Louisville, for appellee Smith.

Before HOWERTON, HUDDLESTON and JOHNSON, Judges.

JOHNSON, Judge:

This is an interlocutory appeal by the Commonwealth of Kentucky from an order of the Jefferson Circuit Court suppressing evidence seized during the search of the multiple-occupant dwelling in which the defendants resided. We vacate the order of suppression and remand.

This appeal requires the resolution of two separate issues which, while distinct, are interrelated due to the particular facts of this case. We are asked to determine whether the search warrant authorizing the search is invalid as a blanket search warrant thus requiring suppression of any evidence found pursuant to its execution. Additionally, we are asked to determine whether the evidence must be suppressed as discovered under a warrant obtained on an inaccurate affidavit.

The case arose as follows. On June 21, 1993, Detective D'Shawn Johnson presented an affidavit to Jefferson District Judge Steve Ryan in application for a search warrant. The substance of this affidavit was that a confidential informant had advised Detective Johnson of illegal drug trafficking activity at 2709 West Chestnut Street by appellee Eugene Smith and that Smith was in possession of a large quantity of cocaine. The affidavit also stated that Detective Johnson had observed several individuals make short visits to 2709 West Chestnut Street, which was further indicative of drug activity. Judge Ryan issued the search warrant which was executed the same day. The search revealed a small baggie of rock cocaine between the wall and nightstand in Smith's room and some marijuana was found in a cigarette pack in a room belonging to appellee Richard Roberts who it was discovered also lived at the address along with other occupants not previously known to the police.

On June 30, 1993, Detective Johnson presented a second affidavit to a different Jefferson District Judge[1] seeking another search warrant for 2709 West Chestnut Street. This affidavit indicated that a reliable confidential informant had told Detective Johnson that Eugene Smith had received a large shipment of cocaine within the preceding 24 hours and that Smith was selling drugs to people in the area and that "Mr. Smith keeps money and drugs in different locations throughout his house." The affida-

---

1. The district judge's name is illegible from the signature on the search warrant and does not appear anywhere else in the record.

vit contained no information as to the existence of any other people residing at that address, nor did Detective Johnson relate this fact to the judge who issued the second warrant. A warrant was issued which read in pertinent part as follows:

> * * * [Y]ou are commanded to make immediate search of the premises known and numbered as
>
> 2709 West Chestnut St.
>
> Louisville, Jefferson County, Ky.
>
> and more particularly described as follows: A red three story dwelling faceing (sic) south onto chestnut (sic). The dwelling has two doors in front, both doors are covered by a glass screen door. The numbers 2709 are in black letters located to the east of the door frame.
>
> The above is located in Louisville, Jefferson county (sic) Ky.
>
> and/or on the person or persons of: Eugene Smith, B/M d.o.b. 5–19–44 * * *, and/or person(s) present who may conceal or destroy evidence.
>
> the following described personal property: Cocaine and/or any other controlled substance. Any device used to cut, measure or package controlled substance. Any monies derived from the sale of illegal drugs.

The search pursuant to this second warrant was conducted on June 30, 1993. A sizeable quantity of rock and powder cocaine was found in a stair post along with an Acculab scale in the kitchen cabinet and marijuana "roaches" in Smith's bedroom. Found in the bedroom belonging to Roberts were two bags of marijuana, a bag of cocaine, hemostats, and hand scales. Smith and Roberts were indicted by a Jefferson Circuit Court grand jury for various offenses arising from the two searches. Roberts moved the trial court to suppress the evidence seized during the second search on the basis that the search warrant was a "blanket" search warrant in that it was directed against a multiple-unit dwelling without sufficient definiteness as to exclude the search of an unintended subunit. Smith moved the trial court to suppress the evidence garnered from both searches as neither warrant sufficiently specified the portions of 2709 West Chestnut that were to be searched.

A suppression hearing was conducted on these motions. Evidence was presented that while 2709 West Chestnut appeared to be a single-family dwelling, it consisted of three floors housing individuals most of whom were unrelated. The first floor consisted of a living room, a bathroom, a kitchen, and the bedroom of Smith's elderly mother, Estelle Dixon, and stairs to the second floor. The second floor consisted of four rooms and a doorway leading to the third floor attic. Conflicting testimony was heard as to whether there were numbers on each of the doors on the second floor and the types of numbers that these may have been. The trial court declined to make a finding of fact on this issue.

Richard Roberts testified he had lived at 2709 West Chestnut for some time and had an arrangement with Eugene Smith's mother, whom he paid fifteen dollars a month in rent and helped with day-to-day activities. Roberts, who apparently lived on the third floor, testified that Eugene Smith lived in one of the second-floor rooms and that Smith had given Roberts a lock for the door to his room, but kept a key to the lock. Roberts stated that he was the only occupant of his room but that three other people besides Smith lived on the second floor. He said that each of those people had a separate room with a separate padlock on his door and each paid rent to Smith's mother. Smith, however, was said to have keys to all the rooms and to have "run" the house. Roberts described his living quarters as "just a room" and that everyone used the kitchen, much of the downstairs, and the bathrooms in common.

Louise Washington, a friend of both Smith and Roberts, testified that she was familiar with 2709 West Chestnut Street. She said that each person who lived in the house had his own room with a number on the door. She said there were four bedrooms on the second floor, one bedroom on the first floor for Smith's mother, and Roberts' room was upstairs.

Regina Williams, Smith's fiancee, testified that there were five numbered apartments in the house and that all of the rooms on the

second floor had numbers on the doors. These numbers were removed during remodeling in April of 1993 but were replaced when the work was completed and were there at the time of the searches. She stated that the number on Roberts' door was knocked off in one of the searches.

Dona Cook testified that she was outside the premises when the police arrested Smith after the June 21 search and that she went into the house to check on Mrs. Dixon. Louise Washington was with her and they went through the whole house and observed damage done by the police. She said the front door and interior doors had been kicked in. She said the lock to Roberts' room had been broken. Cook knew that several people lived in the house and paid rent to Mrs. Dixon. She said there were numbers on the doors of the various rooms along with padlocks.

Detective Johnson testified that he prepared both affidavits and was present during both searches of the building. He stated that during the first search, he became aware that the house was occupied by Smith, his mother, and Richard Roberts. The detective said that following the first search Smith had told him that he ran the house and had keys to the different places in the house. He said he could not recall seeing any numbers on the doors.

The trial court declined to suppress the evidence seized during the first search, but found that after the police executed the first warrant, regardless of whether the rooms were separately numbered, they knew there were people living in the house besides Smith. Because the warrant described a single-family dwelling, the trial court concluded that it was not sufficiently particular and therefore void. The trial court also found the case could be analyzed as a warrant obtained on an inaccurate affidavit, saying that "the judge reviewing the affidavit might well have reacted differently if he had been informed that the building contained other roomers." The items seized in the second search were ordered suppressed and this appeal followed.

■ The first issue we must determine is whether the warrant sufficiently describes the place to be searched. Under the Fourth Amendment of the Federal Constitution, a search warrant is sufficient if the officer charged with making the search is able with reasonable effort to identify and ascertain the place intended to be searched with certainty. *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760 (1925); *United States v. Burke,* 784 F.2d 1090, 1092 (11th Cir.1986). Section Ten of the Kentucky Constitution is satisfied by a description of such certainty as to reasonably identify the premises to be searched. *Commonwealth v. Appleby,* Ky.App., 586 S.W.2d 266, 269 (1978). The purpose behind these minimum requirements of specificity is to avoid cloaking the police with selective discretion in determining what may be searched as such discretion would allow intrusions upon the property of strangers to the process. Accordingly, the general rule is that a search warrant directed against a multiple-occupancy structure will usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search of other units located in the building and occupied by innocent persons. Annot. *Search Warrant: Sufficiency of Description of Apartment or Room to Be Searched in Multiple–Occupancy Structure,* 11 A.L.R.3d 1330 § 3 (1967 and 1994 Supp.); *United States v. Busk,* 693 F.2d 28, 29 (3rd Cir.1982); *United States v. Votteller,* 544 F.2d 1355, 1363 (6th Cir.1976); *State v. Leveque,* Fla., 530 So.2d 512, 513 (1988). This rule is illustrated in Kentucky by *Williams v. Commonwealth,* Ky., 261 S.W.2d 416 (1953), which held as an invalid blanket warrant one directed simply at "the Ewen Hotel in Jackson Kentucky, now used and occupied by Morris Williams for hotel purposes" when in fact many of the rooms were occupied by renters not the target of the search.

■ There are, however, exceptions to the general rule. The first is the "multiple-unit" rule used in certain circumstances to validate a warrant which does not specify the particular apartment in a multiple-unit structure which is to be the target of the search. The multiple-unit rule requires that the building in question appear to be a single-

occupancy structure rather than a multiple-occupancy structure, and that neither the affiant nor the investigating or executing officers knew or had reason to know of its actual multiple-occupancy character until execution of the warrant. *Maryland v. Garrison,* 480 U.S. 79, 85–86, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 81–82 (1987); *State v. Alexander,* 41 Wash.App. 152, 154, 704 P.2d 618, 619 (1985); 11 A.L.R.3d at § 8. It is required, however, that upon discovery of the multiple-occupancy, reasonable efforts be made to limit the search to the subunit most likely connected to the criminal activity identified in the warrant. *Garrison, supra,* 480 U.S. at 87, 107 S.Ct. at 1018, 94 L.Ed.2d at 82; *Alexander, supra,* 41 Wash.App. at 154, 704 P.2d at 619. Even though the terms are often used interchangeably, it has been held that a multiple-occupancy structure is not automatically a multiple-unit structure. The required specificity for search warrants in this context concerns not the number of occupants but the existence of separate units or subunits within a structure. "The mere fact that a structure contains several residents who are not related to one another does not automatically convert its rooms into 'subunits.'" *Alexander, supra,* 41 Wash.App. at 155, 704 P.2d at 620–621; *State v. Coatney,* 44 Or.App. 13, 18, 604 P.2d 1269, 1273 (1980).

▮ In contrast to the multiple-unit rule is the community-living exception, which applies where several persons occupy the premises in common, rather than individually, as where the occupants share common living quarters but have separate bedrooms. In such instance, a warrant which describes the entire premises will justify a search of the entire premises if all the occupants of the house have access to the entire premises. *Alexander, supra,* 41 Wash.App. at 154–155, 704 P.2d at 620; *State v. Sheehan,* 217 N.J.Super. 20, 29, 524 A.2d 1265 (1987); *State v. Lorenz,* Minn., 368 N.W.2d 284, 286–287 (1985). "The multiple-occupancy rule is predicated upon the thesis that occupants of a single living unit, whether related or not, generally have at least some access to each other's bedrooms. Each resident's reasonable expectation of privacy is thereby diminished." *State v. Sheehan,* 217 N.J.Super. 20, 29, 524 A.2d 1265, 1269 (1987), *citing* 2 La-

Fave, *Search and Seizure, A Treatise on the Fourth Amendment,* § 4.5(b) at 219–220 (1987). A further explanation given of this exception is that where a significant portion of the premises is used in common and other portions, while ordinarily used by but one person or family, are an integral part of the described premises and are not secured against access by the other occupants, then the showing of probable cause extends to the entire premises. For example, if three persons share an apartment, using a living room, kitchen, bath and hall in common but holding separate bedrooms which are not locked, whichever one of the three is responsible for the described items being in the apartment could have concealed those items anywhere within it, including the bedrooms of his co-tenants. *Alexander, supra,* 41 Wash.App. at 155, 704 P.2d at 620, *citing* 2 W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 4.5(d) at 81 (1978). Under the community-living exception, knowledge of the multiple-occupancy of the residence before application for the warrant is not material. *Alexander, supra,* 41 Wash. App. at 154–155, 704 P.2d at 620.

As has been noted, the trial court failed to make any factual determinations other than the finding that after the first search, the police were on notice that other persons resided at 2709 West Chestnut Street in addition to Smith. Smith argues that as the judge found evidence obtained in the first search admissible under the holding of *Maryland v. Garrison,* which involved the multiple-unit rule which is only utilized if subunits are involved, then implicitly the court made a finding that the structure contained subunits. Without specific factual findings tending to show a structure contained subunits, the use of that term is conclusory at best. However, if subunits are indeed involved, the Commonwealth may not avail itself of the multiple-unit exception.

Certain findings of fact would bring this case under the community-living exception, though. The trial court on remand must make a finding of whether the building contained subunits or whether the premises were occupied in community fashion. In making such a determination, the trial court

should consider relevant factors such as whether rooms constituted independent living units, separately locked or otherwise identifiable as private spaces. Separately locked bedrooms would tend to indicate subunits. It is conceivable that the trial court could find that Smith retained a key to all the rooms in the house. The fact that one has a key to units other than his own does not necessarily mean that a house is occupied in community fashion, as certainly landlords and resident managers often retain keys to apartments for emergency access in appropriate situations. The question to be resolved here is whether there existed an equal right of access to the individual rooms between those who had keys to those rooms. Whether the facts of this case qualify as an exception to the general requirement of specificity of description of the premises to be searched involves findings of fact which must be made by the trial court.

While both defendants have challenged the warrant as authorizing a blanket search, Roberts also asserts that the evidence seized from his room must be suppressed as the warrant did not mention him by name and thus did not authorize the search of any room occupied ·by him. We cannot agree. "A search warrant, unlike an arrest warrant, may issue without the slightest clue as to the identity of the criminal, if there is probable cause to believe that fruits, instrumentalities or evidence of criminal activity are located at the place to be searched." *United States v. Webster,* 750 F.2d 307, 318 (5th Cir.1984). *Henry v. Commonwealth,* 312 Ky. 491, 492, 228 S.W.2d 32, 33 (1950), held

> [i]t is not essential that the affidavit for a search warrant or the warrant itself should designate the suspected person or the owner or individual in control and possession of the property to be searched. Giving the name of the person may add to the description by identifying the occupant but otherwise it is immaterial.

The fact that other persons besides Smith resided at 2709 West Chestnut Street while only Smith's name appeared on the affidavit or warrant does not make the warrant invalid either in whole or as against Roberts. The question is whether those persons maintained distinct subunit residences and if so, whether there was probable cause to search those subunits.

Roberts mounts a further challenge to the warrant based upon its authorization of the search of "Eugene Smith ... and/or any other person(s) present who may conceal or destroy evidence." He is correct that this Court's previous holding in *Johantgen v. Commonwealth,* Ky.App., 571 S.W.2d 110 (1978), held such an "all persons present" clause as invalid for lack of specificity in description of persons to be searched. It does not necessarily follow, however, that the invalidity of one portion of a warrant will vitiate the entire document. The infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portions of the warrant or lawfully seized during its execution. *Commonwealth v. Lett,* 393 Mass. 141, 144–145, 470 N.E.2d 110, 113 (1984). The propriety of redaction of a warrant containing valid severable phrases or clauses has been widely discussed and generally embraced. *See United States v. Christine,* 687 F.2d 749, 758–759 (3rd Cir.1982); *People v. Kolniak,* 175 Mich.App. 16, 18–24, 437 N.W.2d 280, 281–284 (1989); *Carney v. State,* Miss., 525 So.2d 776, 784–785 (1988); *State v. Horsey,* Mo.Ct.App., 676 S.W.2d 847, 853 (1984). *State v. Halverson,* 21 Wash. App. 35, 37, 584 P.2d 408, 409 (1978).

While *Johantgen, supra,* does not discuss redaction as such, we think that it is in accordance as only the clause commanding the search of "any other person present believed to be involved in the illegal use of, possession of, or trafficking in controlled substances" was held to be invalid. The Court did not hold that infirmity to render invalid the whole warrant even though it was presented with the opportunity to do so as other portions of the warrant commanded the search of one Daryl Driver, his car, and his residence, and heroin was found on Driver's person. We observe that the record here shows no evidence obtained from the person of either defendant during the course of the second search, rather all items appear to

have been found somewhere within the house. While we accept Roberts' assertion that part of the warrant was defective under *Johantgen*, that fact alone will not help the defendants if that portion of the warrant which commanded a search of the house is found to be valid.

 The Commonwealth, while pointing out that a multiple-occupancy dwelling is not necessarily the same as a multiple-unit dwelling, also contends that regardless of the resolution of that issue, probable cause existed to search the entire building. The basis for this assertion is the informant's assertion contained in the affidavit that Smith kept money and drugs hidden throughout his house. It is true that a warrant which authorizes the search of more than one apartment in an apartment building will be upheld if it is supported by probable cause for each apartment. *United States v. Votteller*, *supra*, 544 F.2d at 1363; *United States v. Olt*, 492 F.2d 910, 911 (6th Cir.1974). If the house in question were a single-family residence, there would be no dispute as to the sufficiency of the affidavit in establishing probable cause to search the premises. The information by an informant whose past tips had proven reliable, when combined with Smith's prior arrests for trafficking in controlled substances and the recent discovery of crack cocaine during execution of the first warrant by Detective Johnson would support a warrant for Smith's residence.[2] The prob-

lem is that if the house contained separate subunits, their existence was not made known to the issuing judge. The trial court correctly chose to analyze the warrant as one obtained on an inaccurate affidavit. This is the proper analysis here because on its face the affidavit, describing what appears to be a single-family dwelling, does establish probable cause to search that building as described.[3] The correct standard is that set out in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). To attack a facially sufficient affidavit, it must be shown that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause. The same basic standard also applies when affidavits omit material facts. An affidavit will be vitiated only if the defendant can show that the police omitted facts with the intent to make, or in reckless disregard of whether the omission made, the affidavit misleading *and* that the affidavit, as supplemented by the omitted information, would not have been sufficient to support a finding of probable cause. *United States v. Sherrell*, 979 F.2d 1315, 1318 (8th Cir.1992); *State v. Garrison*, 118 Wash.2d 870, 872–873, 827 P.2d 1388, 1390 (1992). Again, a determination of the character of the living arrangements is crucial. If the affiant should have known that other residents lived on the second and third floors of the house in separate subunits, then his failure to present this

2. Magistrates and judges must examine the "totality of the circumstances" set forth in the affidavit to determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983) (adopted for purposes of Kentucky Constitution in *Beemer v. Commonwealth*, Ky., 665 S.W.2d 912, 914 (1984)). Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search that location. *United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987). An issuing magistrate need not determine that the evidence sought is in fact on the premises to be searched or that the evidence is more likely than not to be found where the search takes place. He need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit. *Id.*

The standard of review for the issuance of a search warrant requires reviewing courts to ex-

amine whether the issuing judge had a substantial basis for concluding that the affidavit in support of the warrant established probable cause. *Gates, supra*, 462 U.S. at 238–239, 103 S.Ct. at 2332; *Beemer, supra*, 665 S.W.2d at 915.

The issue of probable cause is one of law and appellate courts may review the sufficiency of the information before the magistrate independent of the trial court's determination. *State v. Frohlich*, N.D., 506 N.W.2d 729, 732 (1993).

3. The "good faith" exception announced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applicable when police conduct a search under a search warrant later found defective, is unavailable when the affidavit contains false or misleading information. *Crayton v. Commonwealth*, Ky., 846 S.W.2d 684, 687–688 (1993), *citing Leon, supra*, 468 U.S. at 922–924, 104 S.Ct. at 3420–3421, 82 L.Ed.2d at 698–699.

information would at least be in reckless disregard as to whether the affidavit was misleading as the phrase "Mr. Smith keeps money and drugs throughout his house" from a reliable informant, while giving probable cause to search a subunit belonging to Smith and common areas to which he had access, would not give probable cause to search other subunits occupied by others unnamed in the affidavit.[4] The assertion that he kept money and drugs throughout his house does not make it sufficiently clear that he kept money in apartments rented to others which also existed in the house. Perhaps this information was not concealed with the intent to extend the search to other areas for which no probable cause existed, but at the very least, the omission of the existence of subunits would be in reckless disregard of whether the affidavit was made misleading because the end result of such an omission would be the issuance of a warrant for a search of an entire building when probable cause really existed only for a portion of that building.

However, if the premises prove to be a community-living situation, the result is different. The affiant then would have had no duty to disclose the existence of other residents to the issuing judge. As stated earlier in this Opinion, probable cause is not contingent upon the identity of persons occupying a place to be searched. In a community-living arrangement, the affiant would have reasonably believed that the main target of the investigation had access to the entire premises and thus, as far as he knew, the entire building might have been used for stashing cocaine or drug money. The affiant's failure to inform the issuing judge could not have been reckless nor would the purpose of the omission have been to broaden the scope of the search. Given the easily concealable and movable nature of the items sought and difficulty in pinpointing their exact location within the house, probable cause would have extended to the whole house even without the informant's assertion that Smith kept money and drugs throughout.[5] If the premises were occupied in community-living fashion, then there was no reason for the issuing authority to be given any other description than that presented. If, however, the premises are found to have contained subunits, the search warrant would have been issued on a misleading affidavit and the standard announced in *Franks v. Delaware* would require suppression of evidence obtained pursuant to it.

For the foregoing reasons, the suppression order of the Jefferson Circuit Court is vacated and the case remanded for additional findings consistent with this Opinion.

All concur.

---

4. A warrant's validity is not determined by what the police knew about a building's nature, but what they should have known. *See United States v. Votteller, supra,* 544 F.2d at 1363–1364; *Commonwealth v. Erickson,* 14 Mass.App.Ct. 501, 506, 440 N.E.2d 1190, 1193 (1982).

5. The most obvious place to search would be the drug dealer's bedroom. Therefore, any other portion of the house would be a more secure hiding place. *See United States v. Ayers,* 924 F.2d 1468, 1480 (9th Cir.1991).