# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

2005-SC-000883-MR
&
2005-SC-000952-TG

FINAL

DATE 6-14-07 ExRGrauApC.

RICKY FULCHER          APPELLANT

APPEAL FROM LOGAN CIRCUIT COURT
HON. TYLER L. GILL, JUDGE
V.          NO. 01-CR-00179 & 01-CR-00157

COMMONWEALTH OF KENTUCKY          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

<u>Affirming</u>

Appellant, Ricky Lee Fulcher, was granted a retrial by this Court in <u>Fulcher v. Commonwealth</u>, 149 S.W.3d 363 (Ky. 2004). At retrial, Appellant was convicted of complicity to manufacture methamphetamine, manufacturing methamphetamine, possession of anhydrous ammonia in an improper container with intent to manufacture methamphetamine, and possession of drug paraphernalia, second offense. For these crimes, and the crime which was affirmed previously by this Court in <u>Fulcher</u>, <u>supra</u>, Appellant was sentenced to a total of forty-nine years' imprisonment. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). For the reasons set forth herein, we affirm Appellant's convictions upon retrial.

Our previous opinion summarized the facts in this case as follows:

## A. Indictment No. 01-CR-157.

On July 24, 2001, an unidentified caller reported to the Russellville Police Department that two Caucasian males had robbed a boy and fired a weapon at him in the vicinity of Cave Springs Road in Logan County, Kentucky. Law enforcement units from the Kentucky State Police, the Logan County Sheriff's Office, and the Auburn Police Department began searching for the two men. While driving down Gasper River Road, some of the officers passed Appellant's residence and noticed a number of people standing in the yard, all of whom, upon observing the marked police vehicles, immediately ran into the woods behind the residence. While giving chase, the officers noticed two marijuana plants growing in Appellant's back yard and the scent of ammonia emanating from an open window in the residence. Unable to obtain a response to knocks on the door of the residence, the officers sought and obtained a search warrant for the residence and surrounding property.

While the officers were awaiting arrival of the search warrant, Appellant emerged from the residence claiming to have been asleep. The officers ordered him to remain outside until after the warrant was executed. One of the persons who had run into the woods, David Harrison, was apprehended but not charged. Six others, C.J. Anderson, Johnnie Finn, Kandi Finn, Andrea Freeman, Jody Cherry, and Matthew Jones, voluntarily returned to the residence and were subsequently arrested.

. . .

The July 24, 2001, search of Appellant's property was conducted by four Kentucky State Police officers. Outside Appellant's residence they found (1) the two marijuana plants; (2) two plastic containers containing "pill dough;" [(3)] a "burn pile" containing [] several empty punctured Prestone starting fluid cans (the ether is removed by puncturing the bottom of the can), (4) several empty Coleman Fuel cans; (5) two boxes filled with used coffee filters; (6) a glass container containing used coffee filters and three layers of liquid attached by plastic tubing to a sealed ketchup bottle which was "cooking" the liquid in the glass container, i.e., gas was then passing from the ketchup bottle through the plastic tubing into the glass container causing the liquid contents of the container to bubble; and (7) an altered propane tank fitted with a copper valve that had turned a bluish-green color (often caused by a chemical reaction with anhydrous ammonia) and containing a small amount of liquid that field-tested positive for anhydrous ammonia. After field-testing the contents of the propane tank, the officers disabled the tank from future use by puncturing it with bullet holes. The officers concluded that the ketchup bottle attached to the bubbling

glass jar was a hydrogen chloride "generator" that was "cooking" the coffee filters in the jar in order to extract the methamphetamine residue remaining from an earlier filtering process. The three layers in the bubbling jar consisted of a powdery substance at the bottom, a salty liquid substance in the middle, and a clear substance at the top. The contents of all three layers subsequently tested positive for methamphetamine.

Inside the residence, the officers found (1) a bottle of denatured alcohol on the bar in the living room and (2) an aluminum foil "boat," a device commonly used in smoking methamphetamine, in the bedroom. The "boat" contained burn marks (the methamphetamine is placed on the "boat," which is then heated so that the fumes can be inhaled). In the kitchen, the officers found (3) two funnels and (4) a Mason jar, as well as [(5)] cans of [] Liquid Fire and (6) Coleman Fuel, and (7) a glass jar in the refrigerator containing ether. They also found what they believed to be (8) a bowl of liquid anhydrous ammonia in the deep freeze[r]. The odor emanating from this bowl was the odor that had first attracted their attention and prompted them to obtain the search warrant. The officers diluted the substance in the bowl and poured it onto the ground without testing it.

Following the search, Appellant was arrested and charged with manufacturing methamphetamine, possession of anhydrous ammonia in an unapproved container with intent to manufacture methamphetamine, possession of drug paraphernalia, and possession of marijuana. He posted bond and was released.

. . .

B. Indictment No. 01-CR-179.

On August 1, 2001, Jody Cherry, one of the persons arrested on Appellant's property on July 24, 2001, signed a criminal complaint accusing Appellant of twice threatening to kill him. On August 3, 2001, Captain Wallace Whitaker and Deputy Steve Stratton of the Logan County Sheriff's Office proceeded to Appellant's residence to serve him with arrest warrants for terroristic threatening. Upon their arrival, they saw the same altered propane tank that the state police officers had disabled on July 24, 2001. They also detected a strong odor that Stratton believed was "ammonia or ether." Based on the presence of this odor and the altered propane tank, the officers obtained a warrant to search Appellant's residence and property.

During the search inside the residence, the officers discovered (1) two plastic containers with powder in the bottom that were still

3

smoking, and two empty plastic liquid dishwasher bottles that had been fitted with tubing and that were still emanating gas. Stratton opined that these items had recently been used as homemade generators to separate methamphetamine from ether during the last stage of the manufacturing process. They also found (2) a rubber hose; (3) salt; and (4) a glass jar containing fluid that later tested positive for the presence of methamphetamine; as well as (5) rolling papers; (6) a piece of burnt aluminum foil; (7) a Berez torch that could be used to heat the foil for smoking methamphetamine or to cook the denatured alcohol off of the powdered ephedrine or pseudoephedrine; and (8) pipes and syringes with burn residue. In addition, they found (9) a glass jar containing a liquid substance that was emanating an odor that Stratton identified as the odor of anhydrous ammonia, as opposed to, e.g., diluted (aqueous) household ammonia. He also testified that anhydrous ammonia is a hazardous material and that law enforcement procedures in place at that time prohibited its storage or transport to a laboratory. Because the sheriff's office did not possess equipment to field-test the substance, Stratton diluted it with water and poured it onto the ground.

Outside the residence, the officers located a burn pile containing (1) punctured Prestone starting fluid cans and (2) rubber hose. Under the hood of a junked car, they located (3) a bag full of lithium strips. Based on these findings, they charged Appellant with manufacturing methamphetamine, possession of anhydrous ammonia in an unapproved container with intent to manufacture methamphetamine, and possession of drug paraphernalia.

Fulcher, 149 S.W.3d at 367-371. Other facts will be developed as necessary in the opinion.

Based on the evidence, Appellant was convicted of several drug-related crimes, a portion of which were overturned in Fulcher, supra. At retrial, Appellant was once again convicted of several drug-related crimes, which he appeals once again as a matter of right to this Court. For the reasons set forth herein, we affirm.

4

In his first assignment of error, Appellant claims there was not probable cause to support the search warrant issued on August 3, 2001.[1] Pursuant to that search warrant, police recovered several incriminating items which were used against Appellant in relation to the crimes set forth in Indictment No. 01-CR-179.

"A magistrate's determination of probable cause is entitled to 'great deference' and should be upheld so long as the magistrate had a 'substantial basis for concluding that a search would uncover evidence of wrongdoing.'" Ragland v. Commonwealth, 191 S.W.3d 569, 583 (Ky. 2006) (quoting Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)). In this case, the search warrant was supported by an affidavit from Deputy Stratton who stated that he and his partner: (1) observed an altered propane tank in Appellant's front yard; (2) smelled a strong odor of ether coming from inside Appellant's home; and (3) observed through an open doorway several mason jars sitting on a kitchen counter with one jar containing a clear liquid.

Appellant complains that these facts do not form a substantial basis for probable cause because: (1) Deputy Stratton's mention of the propane tank was misleading since it was left over from the search conducted on July 24, 2001; and (2) it is not illegal to possess ether or mason jars containing clear liquid. We agree that Deputy Stratton's mention of the propane tank in his affidavit could have been misleading since he failed to explain that the tank was observed and disabled at the July 24, 2001 search. However, the trial court made a specific finding that there was no bad faith on the part of Deputy Stratton when he

---

[1] Appellant does not challenge the search warrant issued on July 24, 2001.

completed his affidavit.[2] See Commonwealth v. Smith, 898 S.W.2d 496, 503 (Ky. App. 1995) ("To attack a facially sufficient affidavit, it must be shown that (1) the affidavit contains intentionally or recklessly false statements, and (2) the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause."). Although Deputy Stratton's affidavit should have been more accurate and clear, we nonetheless find evidentiary value in the propane tank's presence on Appellant's property since it shows that Appellant possessed other items, besides the ether, that were strongly associated with the manufacture of methamphetamine.

In any event, even if the propane tank is completely discounted, the remaining facts supporting Deputy Stratton's affidavit are sufficient, in and of themselves, to form a substantial basis for probable cause. See id. While it is not illegal to possess ether, it is simply not a chemical that is typically emanating from or found in most residential households. Moreover, ether is widely known to be a key ingredient in methamphetamine manufacture. When this extremely incriminating fact is coupled with the officer's observation of other items known to be associated with methamphetamine manufacture, i.e. several mason jars on a kitchen counter with one containing clear liquid, we find that a "substantial basis" did exist, even without consideration of the altered propane tank, to support the warrant issued on August 3, 2001.[3]

---

[2] Deputy Stratton testified that at the time he completed the affidavit used to obtain the August 3, 2001 search warrant, he did not realize that the propane tank in the front yard was the same tank that was observed and disabled at the July 24, 2001 search.
[3] Appellant argues in the alternative that he is entitled to a new suppression hearing because the trial court applied the incorrect standard of review in upholding the August 3, 2001, search warrant. Even if the trial court did apply

6

Appellant next argues that since the jury was instructed on complicity, the trial court erred in refusing to also instruct on the lesser included offense of facilitation.[4] Based on the evidence presented to the jury, Appellant claims that "a reasonable juror could entertain reasonable doubt of [Appellant's] guilt of the greater charge, but believe beyond a reasonable doubt that [Appellant was] guilty of the lesser offense." White v. Commonwealth, 178 S.W.3d 470, 490 (Ky. 2005). The Commonwealth counters that pursuant to the reasoning set forth in White, supra, a facilitation instruction was not warranted in this case. For the reasons set forth herein, we agree with the Commonwealth that the evidence did not support a facilitation instruction.

The White Court reiterated that a facilitation instruction is not required in every case where a defendant is charged with complicity. Id. In White, we held that the evidence did not support a facilitation instruction. Id. In so holding, we explained:

> Appellant's theory would require the jury to split the difference between his testimony and that of [the Commonwealth's witnesses] to find the existence of a mental state for which there was no affirmative evidence. Such an approach would require that a facilitation instruction be given in every case where the defendant is charged with complicity. But such an approach is improper and a lesser-included offense instruction is available only when supported by the evidence. The evidence presented at trial supported only two theories: that Appellant was an active participant in planning the crime and intended that it be carried out, or that he was an innocent bystander who happened to be present when some of the instruments used in the crime were acquired. There was no evidence of a middle-ground violation of the facilitation statute.

the wrong standard, it is of no consequence since "[t]he issue of probable cause is one of law and appellate courts may review the sufficiency of the information before the magistrate independent of the trial court's determination." Commonwealth v. Smith, 898 S.W.2d 496, 504 n.2 (Ky. App. 1995).

[4] Appellant notes that facilitation was instructed upon in the first trial.

<u>Id.</u> at 490-491 (internal quotations and citations omitted).

This case is similar to <u>White</u> in that there were only two theories of the case presented at trial. The Commonwealth's theory was that Appellant was either a principal or an accomplice to manufacturing methamphetamine, and its case consisted of physical evidence of active methamphetamine manufacture on Appellant's property and a witness who testified that she saw Appellant making and selling methamphetamine on his premises. Appellant's case consisted of testimony from himself and other witnesses, totally disclaiming any knowledge whatsoever of the crime and suggesting that other people tried to "set Appellant up" by manufacturing the drug at his premises during times when Appellant was either sleeping or in jail.

Appellant argues that while "a middle-ground violation of the facilitation statute" was totally inconsistent with his defense at trial, the jury could have discounted the testimony of all the witnesses and inferred from the physical evidence alone that while Appellant knew that other people were manufacturing methamphetamine on his property, he was "wholly indifferent" to the actual completion of the crime. This argument, of course, is without merit for the reasons set forth in <u>Thompkins v. Commonwealth</u>, 54 S.W.3d 147, 150 (Ky. 2001).

In <u>Thompkins</u>, the defendant was observed meeting another co-defendant at a Holiday Inn, receiving a suitcase from that co-defendant, and driving to another residence where the defendant and others inspected the contents, which happened to be cocaine. Thereafter, the cocaine was removed from the suitcase and placed in a grocery bag on the floorboard of defendant's vehicle. The

8

defendant then transported prospective buyers of the cocaine in the vehicle prior to the vehicle being stopped by police. Id. at 151. The Thompkins defendant argued that the jury could reasonably infer from these undisputed facts that while he knew about the cocaine and the trafficking that was about to occur, he was "without the intent that the crime be committed." Id. In writing for the Thompkins Court, Justice Cooper rejected this argument, holding as follows:

> Appellant's tendered facilitation instruction embodied a theory that Appellant knew [his co-defendants] were engaged in a drug transaction, but that he was transporting these two strangers from California to the location of their intended drug deal out of the goodness of his heart, wholly indifferent to the actual completion of the crime, i.e., without the intent that the crime be committed. Nothing in the evidence supports such a theory. If Appellant was not involved in the drug transaction or did not intend for [his co-defendants] to consummate it, why were they and the cocaine in his vehicle instead of in [another co-defendant's] vehicle? The duty to instruct on any lesser included offenses supported by the evidence does not require an instruction on a theory with no evidentiary foundation. The jury is required to decide a criminal case on the evidence as presented or reasonably deducible there from, not on imaginary scenarios. Appellant was not entitled to a facilitation instruction in this case.

Id. (internal citation omitted).

Likewise, based on the evidence presented to the jury, it is simply not plausible or reasonably deducible from the evidence that Appellant would have knowingly allowed methamphetamine to be manufactured at his house "out of the goodness of his heart, wholly indifferent to the actual completion of the crime." Id. Since this case lacks any affirmative defense claiming otherwise or some rational evidentiary foundation supporting such a theory, Appellant was not entitled to a facilitation instruction in this case. See Smith v. Commonwealth, 722 S.W.2d 892, 896-897 (Ky. 1987) (where defendant admitted being at the scene of the crime but disclaimed any knowledge of his companion's intention to

9

commit rape and murder, defendant was not entitled to a facilitation instruction); Neal v. Commonwealth, 95 S.W.3d 843, 851 (Ky. 2003) (facilitation instruction not warranted where defendant "failed to offer any credible evidence that would allow the inference that he knowingly assisted the robbery and murder but was indifferent to its success"). Cf. Webb v. Commonwealth, 904 S.W.2d 226 (Ky. 1995) (defendant entitled to a facilitation instruction because his affirmative testimony supported such a theory).

Appellant next alleges it was error to admit testimony from a Commonwealth's witness who testified that the weekend prior to Appellant's first arrest in this case, she was at Appellant's residence. While there, she saw people leave Appellant's residence with the "product" and then return a short time later with "big bills" which were handed over to Appellant. While Appellant acknowledges that "evidence of sales of methamphetamine might tend to prove a motive to manufacture it," see KRE 404(b)(1), he claims the testimony was not credible and thus, its prejudicial effect outweighed its probative value. We disagree.

"A trial judge's decision with respect to relevancy of evidence under KRE 401 and 403 is reviewed under an abuse of discretion standard." Love v. Commonwealth, 55 S.W.3d 816, 822 (Ky. 2001). In this case, the testimony was clearly probative since it tended to: (1) provide a motive; and (2) disprove Appellant's defense that he was "framed." Moreover, it is well-established that questions of credibility are reserved for the jury's consideration. Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky. 1991). In view of the totality of these

circumstances, the trial court did not abuse its discretion when it admitted the testimony.

In his final assignments of error, Appellant claims he was entitled to directed verdicts on the charges of complicity to manufacture methamphetamine on July 24, 2001, manufacturing methamphetamine on August 3, 2001, and possessing anhydrous ammonia in an improper container with intent to manufacture methamphetamine on August 3, 2001. However, these claims were not preserved since Appellant failed to renew his motion for a directed verdict at the close of the entire case. See Baker v. Commonwealth, 973 S.W.2d 54, 55 (Ky. 1998) (" a 'motion for a directed verdict made at the close of the plaintiff's ... case is not sufficient to preserve error unless renewed at the close of all the evidence'") (quoting Kimbrough v. Commonwealth, 550 S.W.2d 525, 529 (Ky. 1977)). And in any event, Appellant's arguments are without merit; the Commonwealth produced sufficient evidence to withstand directed verdict motions on all of the above charges.

The jury instructions regarding the charge of complicity to manufacture methamphetamine on July 24, 2001, required the jury to find beyond a reasonable doubt the following:

> Other persons manufactured methamphetamine in or around the residence of [Appellant] and that [Appellant], with the intention of promoting or facilitating the manufacture of that methamphetamine, commanded or engaged in a conspiracy with such other persons to manufacture that methamphetamine or aided or counseled such other persons in manufacturing that methamphetamine.

A directed verdict shall not be granted "[i]f the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty . . . ." Commonwealth v. Benham, 816 S.W.2d 186, 187 (Ky.

1991). Appellant alleges that he was asleep inside the residence at the time an "active cook" was discovered approximately fifty (50) feet from his house. He concludes that since he was asleep, he could not have had knowledge that methamphetamine was being manufactured on his property that night. He contends that his claim is further proved by the fact that he did not destroy any of the incriminating evidence eventually discovered inside the house prior to the police knocking on his door and obtaining a search warrant. Based on these inferences, Appellant argues that a reasonable juror could not have believed that he was complicit in the manufacture of methamphetamine on July 24, 2001. We find Appellant's argument to be without merit.

The Commonwealth submitted more than enough evidence for a reasonable juror to infer that Appellant was complicit in the manufacture of methamphetamine on the night of July 24, 2001. The fact that Appellant might have been asleep during a portion of the manufacturing process or that he did not destroy evidence prior to the search of his residence does not render the Commonwealth's case insufficient or entitle him to a directed verdict.

Regarding the charge of manufacturing methamphetamine on August 3, 2001, Appellant contends that his claim of being set up was dispositively proved by the following facts and inferences: (1) it is simply not plausible that Appellant would invite officers into his home if he was in the process of making methamphetamine at the moment the officers knocked on the door; (2) police transported Appellant to jail and left the home unsecured with others still present inside the residence for approximately two hours prior to their actual search of the home; and (3) since gas generators were still "smoking" at the time police

12

searched the home, it must be inferred that the manufacturing process took place immediately prior to the officer's search when Appellant was absent and in jail.

We disagree that these facts and inferences are dispositive or that it was unreasonable for the jury to find Appellant guilty of manufacturing methamphetamine on August 3, 2001. Appellant's argument does nothing more than challenge the weight and credibility of the evidence presented by the Commonwealth, and of course, such questions are ultimately reserved for the jury. Benham, 816 S.W.2d at 187. Appellant was not entitled to a directed verdict on the charge of manufacturing methamphetamine on August 3, 2001.

Finally, Appellant claims he was entitled to a directed verdict on the charge of possessing anhydrous ammonia in an improper container with intent to manufacture methamphetamine on August 3, 2001. A search of Appellant's home on that date produced a glass jar filled with a substance which police testified was anhydrous ammonia. Deputy Stratton and Deputy Bibb testified that their experience enabled them to identify the substance based on smell alone. Deputy Stratton explained that the substance was discarded at the scene without field-testing or the taking of a sample for inspection by a laboratory because he believed that such tests were unavailable.[5]

---

[5] Of course, as noted by Appellant, this assumption is at least partially incorrect since police were able to field-test the contents of the propane tank discovered on July 24, 2001 and send a sample of the tank's contents to Kentucky State Police for laboratory analysis. The laboratory analysis was able to confirm that the substance in the tank was ammonia, but it could not confirm whether the ammonia was household or anhydrous.

13

Appellant complains that police opinion regarding the identity of the substance found in Appellant's house based on smell alone[6] is not sufficient to support a jury finding that Appellant possessed anhydrous ammonia. He argues that in order for the evidence to be sufficient to support such a finding, police in this case should have been required to verify the substance's identity through either: (1) field-testing; or (2) laboratory testing. Appellant's complaints may be valid, but are not sufficient to render the Commonwealth's evidence insufficient. As explained above, his complaints address the weight and credibility of the Commonwealth's evidence and thus, are reserved for the jury. Id.

For the reasons set forth herein, the judgments and sentences of the Logan Circuit Court are affirmed.

All sitting. All concur.

---

[6] Appellant does not challenge, and therefore, we do not address, the admissibility of this testimony. Rather, the only issue before us is whether the testimony was sufficient to support a finding that Appellant possessed anhydrous ammonia.

14

ATTORNEY FOR APPELLANT

Emily Holt Rhorer
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601

ATTORNEY FOR APPELLEE

Gregory D. Stumbo
Attorney General

George G. Seelig
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, KY 40601