James **FENTRESS**, Appellant,

v.

**COMMONWEALTH** of Kentucky,
Appellee.

No. 2006–CA–002453–MR.

Court of Appeals of Kentucky.

June 27, 2008.

Discretionary Review Denied by
Supreme Court April 15, 2009.

Samuel N. Potter, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General, Samuel Floyd, Jr., Assistant Attorney General, Frankfort, KY, for appellee.

Before CAPERTON, LAMBERT, and THOMPSON, Judges.

## OPINION

CAPERTON, Judge.

James Fentress (Fentress) brings this appeal from a November 19, 2006, judgment of the Grayson Circuit Court, the Honorable Sam H. Monarch, presiding, whereby Fentress pled guilty, conditionally, to first-degree possession of a controlled substance (methamphetamine), possession of drug paraphernalia second or subsequent offense, and possession of marijuana. After a thorough review, we affirm.

On December 22, 2005, two deputies, Deputy Blanton and Deputy Henderson, of the Grayson County Sheriff's Office were dispatched to serve an arrest warrant upon Sharon McCloud (McCloud). While the arrest warrant from the Hardin District Court listed McCloud's address as 406 West Chestnut, Leitchfield, Kentucky, one of the deputies believed McCloud had recently moved to Claggett Road. Deputy Henderson was familiar with the location of McCloud's residence as he had previously placed the residence under surveillance for suspicious drug activity and later testified that this was not the first time that they had to serve papers on McCloud. The deputies proceeded to Claggett Road and arrested McCloud at the residence. Upon arresting McCloud she identified her residence as 460 Claggett Road and identified the residents as herself and Fentress. The deputies noticed a mason jar sitting beside a burn-barrel near the back of the residence which contained a paper towel with pink residue on it, which they believed to be pseudoephedrine, in addition to several cans of starting fluid beside the barrel.

Deputy Blanton then checked the Wal-Mart records for pseudoephedrine sales. Based on this record, the deputy understood that both Fentress and McCloud had purchased two (2) boxes of forty-eight-count (48) of pseudoephedrine. The information from the Wal-Mart records combined with Deputy Blanton's observations during the arrest of McCloud led to the issuance of a search warrant for the Claggett Road residence. The affidavit for the search warrant listed the Fentress/McCloud residence as 460 Claggett Rd. Leitchfield, KY 42754. The description of the residence was that of a faded brown and white single wide trailer with sheet metal under pinning; the occupants of the trailer were listed as James Fentress and Sharon McCloud; and it was noted that there was a silver Ford Ranger extended cab sitting in the driveway. The search warrant likewise listed the property as 460 Claggett Road but noted that there were only two mailboxes at the end of the road, 424 and 460,[1] and that the residence was the first trailer on the right. The search of the residence yielded evidence which resulted in the Grayson County grand jury indicting both Fentress and McCloud. Fentress then filed a motion to

---

1. This was based on the deputy's prior observations.

suppress the evidence, in which McCloud joined.

The suppression hearing focused on two errors contained in the affidavit for the search warrant. First, Fentress claims that the address searched was not the address stated in the affidavit and search warrant. At the hearing Fentress testified that his trailer was actually located at 456 Claggett Road and that 460 Claggett Road was a different residence belonging to Phillip Troublefield. Fentress also testified that where the driveways met Claggett Road there used to be three mailboxes, 424, 456, and 460, but the previous resident had removed the mail box and now Fentress received his mail at a post office box. Second, Fentress claimed that the amount of pseudoephedrine bought by him was different than what was contained in the affidavit for the search warrant. Instead of two (2) boxes of forty-eight-count (48) of pseudoephedrine, the correct amount was actually two (2) packages of twenty (20) pills each for a total of 4.8 grams.

Deputy Blanton testified to the information contained in the affidavit and that the information therein was stated to the best of his knowledge as being complete and accurate, and that he had no intention to mislead the magistrate who signed the search warrant. Deputy Blanton testified that he must have misread the Wal-Mart pseudoephedrine log and that the forty-eight (48) pill count per box mistake must have come from the total 4.8g read out.[2] Deputy Blanton also testified that Phillip Troublefield lived at a nearby residence to Fentress and had told Blanton that both he and Fentress had the same 460 Clag-

gett Road address. The deputy testified that the residence identified descriptively in the search warrant and affidavit was not Troublefield's residence.

The trial court denied the motion to suppress noting that the residence listed to be searched was sufficiently described and that any error in the mailing address was immaterial. The court further noted that the address at which rural mail is received is not precise and it is not unusual for multiple families to receive mail at the same address. As to the wrong amount of pseudoephedrine purchased by Fentress, the court found that this too was immaterial. First, the log from Wal-Mart was difficult to read. Second, the magistrate probably noted that Fentress purchased two boxes of cold capsules and that McCloud did the same within minutes of Fentress's purchase. Third, there was no evidence to formulate a belief that the officer attempted to mislead the magistrate in any way, and that exclusion of the incorrect information still provided enough information to establish probable cause in the mind of most magistrates.

Fentress then entered a conditional plea of guilty. This appeal based on the denial of the suppression motion followed.[3]

■ Fentress argues that striking the two materially false statements, i.e., the address and the quantity of pseudoephedrine purchased, in the affidavit for the search warrant prevents a finding of probable cause. Fentress then argues that the lack of probable cause requires exclusion of the evidence seized pursuant to the search warrant. We disagree.

2. We also note that the Wal-Mart read out is confusing.

3. McCloud likewise entered a conditional plea of guilty and appealed to this Court. This Court affirmed the denial of the suppression

motion in *McCloud v. Commonwealth of Kentucky*, No.2006–CA–002498–MR, Oct. 5, 2007. McCloud's motion for discretionary review is presently pending before the Supreme Court of Kentucky in 2007–SC–000804–D.

Our standard when reviewing a trial court's decision on a motion to suppress evidence is two pronged. First, we initially look to whether the trial court's findings of fact are supported by substantial evidence. If the findings of fact are supported by substantial evidence, such findings are conclusive. *See* RCr 9.78 and *Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky.1998). Second, we then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law. *Commonwealth v. Neal,* 84 S.W.3d 920 (Ky.App.2002); *see also Nichols v. Commonwealth,* 186 S.W.3d 761 (Ky.App. 2005).

It is fundamental that a search warrant may only be issued upon a finding of probable cause. *See Dixon v. Commonwealth,* 890 S.W.2d 629 (Ky.App.1994). Probable cause exists for the issuance of a search warrant if there is a fair probability that contraband or evidence of criminal activity will be found in the place to be searched. *Moore v. Commonwealth,* 159 S.W.3d 325 (Ky.2005). To successfully attack a facially sufficient affidavit, the defendant must demonstrate: (1) that the affidavit contains intentionally or recklessly false statements; and (2) the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause. *Commonwealth v. Smith,* 898 S.W.2d 496, 503 (Ky.App.1995).

In the case sub judice, the trial court addressed the statements made by Deputy Blanton in the affidavit for the search warrant and whether the affidavit, purged of falsities, would be sufficient to support a finding of probable cause. The trial court found that Deputy Blanton did not intend to mislead the magistrate in the issuance of the search warrant. The trial court also found that Deputy Blanton's affidavit, purged of the inaccurate information would still be sufficient to support a finding of probable cause. We have reviewed the record; the trial court's findings are supported by substantial evidence in the record and, therefore, are conclusive. RCr 9.78.

The Fourth Amendment of the U.S. Constitution and Section 10 of the Kentucky Constitution mandate that a search warrant must describe with particularity the place to be searched.[4] This particularity requirement is satisfied if the description in the search warrant enables the officer executing the warrant to identify the place to be searched with reasonable effort.[5] *Duff v. Commonwealth,* 464 S.W.2d 264 (Ky.1971); *Commonwealth v. Smith,* 898 S.W.2d 496 (Ky.App.1995).

The trial court addressed the inaccuracy of the address in the affidavit for search warrant and the search warrant itself. In so addressing, the trial court found that both Phillip Troublefield and McCloud indicated that the Fentress/McCloud trailer's address was 460 Claggett Road; the same address used by Troublefield. Further, we note that there is no evidence in the record, nor was it argued, that the incorrect address led to confusion in serving the search warrant. Thus, the trailer

---

4. The Kentucky Supreme Court has recognized that the protection afforded by Section 10 of the Kentucky Constitution against unreasonable search and seizure is coextensive with the protection afforded by the Fourth Amendment of the U.S. Constitution. *LaFollette v. Commonwealth,* 915 S.W.2d 747 (Ky. 1996).

5. In *Commonwealth v. Martin,* 280 S.W.2d 501 (Ky.1955) the Court held that in rural communities it is "often sufficient if the owner or the occupant of a house or farm is named and the premises described by reference to another farm or a stream or even a nearby town." *Id.* at 502.

to be searched must have been sufficiently described to differentiate it from the surrounding residences. There was no evidence in the record that the individual residences were numbered as were the mailboxes. If the individual residences had been numbered and such numbering thereon not been consistent with the description given, then confusion may have arisen as to which residence was to be searched; this was not the case. Therefore, the particularized description of the trailer sufficiently described the residence to be searched and the inaccuracy of the address, in this case, was immaterial. We agree with the trial court that the physical description of the property satisfies the particularity requirement.

Based on our review, we find that the trial court's findings of fact were based on substantial evidence and that the trial court properly applied the law to those facts. Therefore, we affirm the judgment of the Grayson Circuit Court, the Hon. Sam H. Monarch, Judge, presiding.

ALL CONCUR.