[No. 1259-1. Division One—Panel 2. July 10, 1972.]

THE STATE OF WASHINGTON, *Respondent,* v. O'NEIL
CHISHOLM, *Appellant.*

 

*Steinberg & Steinberg* and *Quentin Steinberg,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Paul J. Bernstein, Deputy,* for respondent.

FARRIS, A.C.J.—On April 14, 1971, Andrew Brozovich was robbed of approximately $480. A jury found that Mr. Chisholm committed the robbery while armed with a deadly weapon. His appeal raises five questions.

(1) The validity of a search warrant, both as to its issuance and execution;

(2) Whether the in-court identification of an alleged accomplice in the crime was so prejudicial as to require the granting of a mistrial;

(3) Whether the approximately $40 in dimes and quarters wrapped in money rolls and discovered in the search of a Seattle rooming house in which Mr. Chisholm formerly lived was properly and sufficiently connected with the approximately $480 taken in the robbery to be admissible into evidence;

(4) Whether the failure of the trial court to permit Mr. Chisholm to inquire into the street address of the chief witness for the prosecution denied Mr. Chisholm his constitutional right to confront the witness against him; and

(5) Whether it was error to submit the question of whether Mr. Chisholm was armed with a deadly weapon to the jury.

 Mr. Chisholm contends that the search warrant did not meet the constitutional requirements of probable cause.

*See Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). The record does not support this contention. The affidavit upon which the magistrate relied in issuing the search warrant included information from one Tyrone Fike who owned and drove the car used to escape from the location of the robbery.

> That Mr. Fike told your affiant that in the morning of April 14th he and one Odell Chisholm were driving around in Mr. Fike's car, a 1962 Chevrolet, Washington license OFY 275 looking for places to rob; that he waited in the car while Chisholm did in fact rob Andrew Brozovich and returned to the car with a large cardboard box containing bags of coins, one vending machine dollar bill money changer and the victim's wallet; that Chisholm performed the robbery with a silver colored .25 caliber automatic; that they then went to the second house south of the intersection with Union Street on the east side of 15th Avenue in Seattle, green in color, multi-story and placed the coins into coin rolls, left the vending machine at that address as well as the .25 caliber automatic which had been borrowed from the occupant of the house; that the victim's wallet was also left at the premises when Mr. Fike left in the afternoon hours of April 14th; . . .

The information given by Fike from his personal knowledge was corroborated independently by a Seattle police detective. The detective had determined independently:

> That in the morning hours of April 14, 1971, one Andrew Brozovich, an employee of Servomation Corp., which operates a fleet of vending machine service trucks was robbed by one Negro male at 2001 21st Avenue South in Seattle, who displayed a small caliber silver pistol and escaped with in excess of $900 in U. S. coins, one vending machine dollar bill money changer, and the wallet of Andrew Brozovich which contained his identification and assorted credit cards; that this Negro male entered a parked vehicle occupied by another Negro male, and they exited the scene, that this vehicle was a 1962 Chevrolet, Washington license OFY 275, which your affiant found to be registered to one Tyrone Fike; . . .

The requirements of *Aguilar* were met:

[T]he magistrate [was] informed of some of the underlying circumstances from which the informant concluded that the [stolen money and articles] were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity [was established], . . . was "credible" or his information "reliable."

(Footnote omitted.) *Aguilar*, 378 U.S. at 114.

■ Mr. Chisholm also contends that the search warrant lacked specificity in describing the precise location of the premises to be searched, as is required by the fourth amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment. *See Ker v. California*, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963). The warrant issued by a Seattle magistrate on April 15 authorized the search of "the second house south of the intersection with Union Street on the east side of 15th Ave., Seattle, green in color, multi-story." It is Chisholm's contention that the warrant failed to describe the particular subunit of this rooming house to which the search should be confined and is therefore constitutionally defective. He cites as authority *People v. Avery*, 478 P.2d 310 (Colo. 1970). In *Avery*, the trial court made a specific finding that the police officers knew or should have known when they obtained the warrant that the building involved was a rooming house. This finding is absent in the instant case and the record does not support an argument that the police knew or should have known that the house to be searched was a rooming house. *People v. Lucero*, 483 P.2d 968 (Colo. 1971), decided after *Avery*, is more similar to the facts before the court. There, a search warrant failed to specify which individual apartment of what appeared to be a single family dwelling was to be searched. The trial court found that the police officers did not know that the dwelling contained individual apartments until they had entered and that the police had every reason to believe the house was a single family dwelling. Here, the record does not support an allegation that the police knew or should have

known the residence contained individual living units. It appeared to be a single family dwelling. *See Owens v. Scafati,* 273 F. Supp. 428 (D. Mass. 1967), *cert. denied,* 391 U.S. 969 (1968).

 It is also argued that the search warrant was invalid because it did not specify the street location of the premises which were to be searched. The question then is whether the warrant was as definite as it could and should have been under the circumstances. The question of invalidity due to indefiniteness turns upon whether the magistrate abused his discretion in deciding that the warrant should issue. The reason for the failure to specifically ascertain the correct street address was included in the affidavit for the warrant.

> That Mr. Fike took your affiant within one half block of the above mentioned premises, which is in the location previously described but that your affiant cannot drive by said residence to ascertain the street address because the occupants are, according to Mr. Fike, on the close lookout for the police and will dispose of the above mentioned property if police cars are seen in the vicinity;
> . . .

We find that the warrant is sufficiently clear to enable an officer to identify the place to be searched with reasonable certainty without aid of any information not contained in the warrant. It permitted the officers to search the entire premises. We find no abuse of discretion in issuing the search warrant.

 Chisholm's next contention is that the in-court identification of a codefendant, Willie Price, after Chisholm had successfully obtained separate trials, was so prejudicial as to require the granting of a mistrial. Mr. Price, a spectator at Chisholm's trial, was identified from the witness stand by Tyrone Fike, who testified that he had seen Mr. Price "[i]n the house on 15th and Union" and that Price was "helping count the money." Chisholm contends that he was forced by this identification to call Price as a witness and that Price's criminal background, which was brought out on cross-examination, was prejudicial to his case. He there-

after moved for a mistrial and assigns error to the trial court's failure to grant the motion.

In *State v. Wilson*, 3 Wn. App. 745, 477 P.2d 656 (1970), this court considered a similar argument. There, the defendant contended that a portion of the prosecuting attorney's opening statement improperly called the jury's attention to the fact that the defendant might not take the witness stand, that these remarks forced him to testify in his own defense in contravention of his constitutional right to refuse to testify, and therefore a mistrial should be granted. We ruled that the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

Here, Mr. Chisholm could have sought appropriate relief if he felt prejudiced by the in-court identification. Instead, he sought to correct what he believed to be harm to his case by calling Mr. Price as a witness. What followed that trial maneuver was proper cross-examination. We cannot find upon the record before us that the trial court erred in refusing to grant the motion for a mistrial.

Chisholm also objected to the introduction into evidence of approximately $40 in dimes and quarters wrapped in money rolls, which were discovered in the search, contending that the state failed to properly connect those coins with the approximately $480 which was taken in the robbery. He relies upon *State v. Barry*, 43 Wn.2d 807, 264 P.2d 233 (1953) to support his argument that the money does not correspond in any "close way" to the money taken in the robbery. We disagree with his reading of *Barry*.

The court in *Barry* specifically stated that the fact that the money in question was not positively identified as that taken from the victim did not necessarily render it inadmissible. Here, the money found in the search was of the same denomination as that taken in the robbery. The testimony of Tyrone Fike regarding the robbery and the disposition of the money after the robbery, if believed, supports a reasonable inference that the money found was some of the money taken in the robbery. Mr. Chisholm's objection goes to the weight rather than the admissibility of the

evidence. We find no error in its admission. *See State v. Austin*, 60 Wn.2d 227, 373 P.2d 137 (1962). *See also* 1 J. Wigmore, Evidence § 154 (3d ed. 1940).

■ Error is also assigned to the failure of the trial court to require Tyrone Fike to give his street address in Los Angeles. Mr. Chisholm contends that this amounted to a denial of his right to confront the witnesses against him guaranteed by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965).

Defense counsel was able to effectively cross-examine Fike and to test his credibility. No reason was offered as to why the street address in Los Angeles to which Fike had only recently moved from Seattle would assist counsel in cross-examination. There is nothing in the record to indicate how this attempt by the state to protect the witness prejudiced Chisholm in any way. The question related to a collateral matter. As was stated in *State v. Temple*, 5 Wn. App. 1, 4, 485 P.2d 93 (1971):

> It is a basic and essential rule that "[t]he extent of the cross-examination of a witness upon collateral matters which tend to affect the weight to be given the witness' testimony, rests within the sound discretion of the trial court." *State v. Goddard*, 56 Wn.2d 33, 37, 351 P.2d 159 (1960).

We cannot find upon the record before us that the trial court abused its discretion in permitting Mr. Fike to withhold his street address.

■ The final assignment of error is that the trial judge improperly instructed the jury to determine whether a "deadly weapon", as defined in RCW 9.95.040(2) was used in the robbery. Chisholm contends that there was no evidence that the pistol used during the robbery was loaded or capable of producing harm if fired; it was therefore error to give the instruction. We answered that question in *State v. Gough*, 2 Wn. App. 733, 736, 469 P.2d 568 (1970).

> In this state, a defendant who commits a crime while armed with "any firearm" is within the contemplation of the statute.

*See also State v. Newman,* 4 Wn. App. 588, 484 P.2d 473 (1971).

Affirmed.

SWANSON and PETRIE, JJ., concur.