[No. 7157–6–II.   Division Two.   July 3, 1985.]

THE STATE OF WASHINGTON, *Appellant,* v. ORVEL LEE ALEXANDER, *Respondent.*

*Henry R. Dunn, Prosecuting Attorney,* and *Bert Paul, Deputy,* for appellant.

*R. Wayne Torneby, Jr.,* for respondent (appointed counsel for appeal).

PETRICH, J.—The State appeals the suppression of evidence discovered in defendant's bedroom during the search of a residence, pursuant to a search warrant which did not name the defendant nor specify the particular room where the evidence was seized. The State contends the trial court applied the incorrect rule of law to determine the legality of a search of what appeared to be a single family residence occupied by three individuals who shared the common facilities of the residence. We reverse and remand.

The pertinent facts are gleaned from the trial court's unchallenged findings of fact. On February 19, 1983, Cowlitz County Sheriff's Officers obtained a warrant to search the residence of Wayne Alexander, located at 319 Cypress St., Longview, Washington. Both parties have stipulated that this warrant was valid. Before obtaining the warrant, the deputy sheriffs did not know that two other tenants, including defendant, also shared the residence. The building's exterior and interior indicated that it was a single family residence. During the search of the residence, the officers became aware that persons other than the person named in the search warrant also resided at the residence. Detectives first searched a bedroom in which they found marijuana and identification belonging to Mark Richard Hurlbert. Detectives then went into another bedroom and found identification belonging to defendant. After finding this identification, detectives continued to search this bedroom and found LSD.

The trial court suppressed the LSD on the basis that the search of the defendant's bedroom exceeded the scope of the search warrant, stating that once the officers became aware they were searching a multiple–occupancy residence and that they were in a bedroom of one other than the one named in the warrant, they should not have searched the bedroom any further.

A search warrant for a multiple–occupancy building will

usually be held invalid if it fails to describe the particular subunit to be searched with sufficient definiteness to preclude a search of one or more subunits indiscriminately. 2 W. LaFave, *Search and Seizure* § 4.5(d), at 78 (1978); Annot., *Search Warrant: Sufficiency of Description of Apartment or Room To Be Searched in Multiple–Occupancy Structure,* 11 A.L.R.3d 1330, § 3 (1967 & Supp. 1984). Two recognized exceptions to this general rule are the "multiple unit" rule and the "community living unit" rule. *See* LaFave, at 79–81. Under the multiple–unit exception, if the building in question appears to be a single–occupancy structure rather than a multiple–occupancy structure, and neither the affiant nor the investigating or executing officers knew or had reason to know of the building's actual multiple–occupancy character until execution of the warrant was under way, the warrant is not defective for failure to specify a subunit within the named building. *State v. Chisholm,* 7 Wn. App. 279, 499 P.2d 81 (1972); LaFave, at 79; 11 A.L.R.3d 1330, § 8. However, in upholding such searches, courts have required that, upon discovery of the multiple occupancy, reasonable efforts be made to limit the search to the subunit most likely connected to the criminal activity identified in the warrant. *See, e.g., United States v. Davis,* 557 F.2d 1239, 1248 (8th Cir. 1977); *People v. Lucero,* 174 Colo. 278, 483 P.2d 968, 970 (1971). Thus, according to LaFave, the multiple–unit exception applies only when: (1) the multiple–occupancy character of the building was not known and could not have been discovered by reasonable investigation; (2) the discovery of the multiple occupancy occurred only after the police had proceeded so far that withdrawal would jeopardize the search; and (3) *upon discovery of the multiple occupancy, reasonable efforts were made to determine which subunit is most likely connected with the criminality under investigation and to confine the search accordingly.* LaFave, at 80.

■ In contrast to the multiple–unit exception, the community living unit exception applies where several persons or families occupy the premises in common rather than

individually, as where they share common living quarters but have separate bedrooms. In the community living unit situation, the courts have held that a single warrant describing the entire premises so occupied is valid and will justify a search of the entire premises. *E.g., State v. Hymer,* 400 So. 2d 637 (La. 1981); *State v. Coatney,* 44 Or. App. 13, 604 P.2d 1269 (1980); *see* LaFave, at 81, and cases cited therein.[1] LaFave offers the following reasoning for treating the two exceptions differently:

> Some of these decisions may be seen as simply another illustration of the [multiple unit] rule, which has sometimes been explained on the ground that requiring police to determine multiple occupancy when there are no external signs of such occupancy would be "analogous to requiring the enforcement officers to determine if a daughter or son pays rent while residing in the same house as their parents and if their use of the house is restricted." However, there is a broader justification for treating cases of community occupation differently: where a significant portion of the premises is used in common and other portions, while ordinarily used by but one person or family, are an integral part of the described premises and are not secured against access by the other occupants, then the showing of probable cause extends to the entire premises. For example, if three persons share an apartment, using a living room, kitchen, bath and hall in common but holding separate bedrooms which are not locked, *whichever one of the three is responsible for the described items being in the apartment could have concealed those items anywhere within, including the bedrooms of his cotenants.*

(Footnotes omitted. Italics ours.) LaFave, at 81.

Here, the trial court applied the "multiple unit" rule in suppressing the LSD found in defendant's bedroom on the basis that (1) once the officers were aware that the residence was a multiple–occupancy residence, they were thereafter required to limit their search to those areas that

---

[1] Under the community living unit exception, knowledge of the multiple occupancy of the residence before application for the warrant appears to be immaterial. *See State v. Coatney,* 604 P.2d at 1272.

they knew were controlled by the person named in the search warrant; and (2) at the time the LSD was found, the officers knew they were in the separate bedroom of one other than the person named in the warrant.

Although the multiple–unit rule previously has been adopted in Washington, *State v. Chisholm, supra,* no Washington appellate court has yet had the opportunity to adopt the community living unit rule nor pass upon the issue presented in this case. We agree with the State that the search in this case is more appropriately governed by the community living unit rule rather than the multiple–unit rule. Even though the residence was occupied by a number of individual tenants, such occupancy should not result in the residence being characterized as a multiple–unit residence.

> "* * * [A] multiple–occupancy structure is not automatically a multiple–unit structure. The essential ingredient regarding specificity requirements for search warrants in this context relates not to the number of occupants but to the existence of separate units or subunits within a structure. The mere fact that a structure contains several residents who are not related to one another does not automatically convert its rooms into 'subunits.'"

*State v. Coatney,* at 18, quoting *State v. Willcutt,* 19 Or. App. 93, 526 P.2d 607, 608 (1974). Here, the residence clearly was not an apartment, boardinghouse, or any other type of separately divided or partitioned multiple–unit building, which would necessitate specificity. *See State v. Chisholm, supra; State v. Coatney, supra.* The tenants shared the kitchen, living room, bathroom, and all other common areas. Although each had his own bedroom, none of the bedrooms was an independent living unit, separately locked, or otherwise identifiable as a private space. Indeed, at the time of the officers' entry, the doors of each bedroom were open and a nontenant, who was already inside the residence, had complete access to the entire house. As stated by LaFave, "whichever one of the three is responsible for the described items being in the apartment could

have concealed those items anywhere within, including the bedrooms of his cotenants." LaFave, at 81. Finally, even *State v. Woodard,* 35 N.C. App. 605, 242 S.E.2d 201 (1978), one of the three cases cited by defendant, recognizes that, although a search warrant directed against a multiple-unit structure must set forth with particularity the subunit to be searched, the "better reasoned cases, however, hold this requirement inapplicable when the premises, or the portions thereof in question, are occupied in common by several individuals." *State v. Woodard,* at 609, citing 11 A.L.R.3d 1330. The *Woodard* court held that in order for the multiple-unit rule to apply to the search of a bedroom and closet of a defendant not named in the search warrant, the defendant must, "in fact, have sole and exclusive control over the bedroom or closet in that home." *State v. Woodard,* at 610.

Here, there is no indication that defendant had sole and exclusive control over his bedroom, and the person named in the warrant could have concealed items anywhere within the residence, including the defendant's bedroom. Therefore, we adopt the "community living unit" rule and hold that the officers' search of defendant's bedroom in this case was justified and did not exceed the scope of the search warrant. Accordingly, we reverse the suppression of evidence found in defendant's bedroom during this search, set aside the dismissal, and remand for trial.

REED, A.C.J., and ALEXANDER, J., concur.