785 P.2d 1232

**STATE of Arizona, Appellant,**

v.

**James Delbert BURNS, Appellee.**

**No. 1 CA–CR 88–301.**

Court of Appeals of Arizona,
Division 1, Department D.

Sept. 19, 1989.

Reconsideration Denied Oct. 31, 1989.

Review Denied Feb. 14, 1990.

Charles R. Hastings, Yavapai Co. Atty. by Julia W. Stoner, Deputy Co. Atty., Prescott, for appellant.

Rhonda L. Repp, Prescott, for appellee.

## OPINION

KLEINSCHMIDT, Judge.

This is an appeal by the state from the trial court's order granting a motion to suppress evidence seized from the defendant's bedroom during the search of a home. We hold that the trial court erred in granting the motion to suppress.

## FACTS

The case arose as follows. An officer of the Bureau of Indian Affairs, working with state and local police, sought a search warrant by telephone from a United States Magistrate in Phoenix for the search of a residence located on the Yavapai Indian Reservation near Prescott, Arizona. The warrant was based upon information received from a reliable informant who had recently seen dangerous drugs in the home of one Theodore Rice. The officer told the magistrate that a person named David Diaz lived in one of the bedrooms in the house, either as a renter or a guest, and that there were a number of "non-Indian individuals who [were] constantly in and out of that particular premises." According to the officer, the informant had seen drugs on a desk in Diaz's room, and the primary intent in searching the house was to locate drugs belonging to Diaz. The informant had also said, however, that drugs were "kinda like scattered throughout the home." When they applied for the warrant, the officers were not aware that anyone other than Rice and Diaz actually resided in the house.

The magistrate issued a warrant for a search of the entire house, authorizing the officers to look for and seize dangerous drugs, drug paraphernalia, and records of drug transactions. Armed with the warrant, the officers went to the Rice home, announced themselves, and entered the house. As the police began to go through the house, they encountered the defendant, James Burns, who was taking a shower. Burns was asked to step out of the shower, and as he did so, one of the officers searched a pair of pants which belonged to the defendant that were found in the bathroom. In a pocket, the officer found what appeared to be a vial containing an illicit drug. Burns was told that he was under arrest.

Burns, as it turned out, also lived in the house and had his own bedroom. He told the officers he wanted to go to his room to put on some clothes. The officers, intending to search the entire house, escorted him to his room. Burns gave them the key to the room, and they went in the room and got a pair of pants for Burns to wear.

At about the same time, an officer was pounding on the locked door of David Diaz's bedroom. The defendant told them that his key, which they already had, also opened Diaz's door. The officers entered Diaz's bedroom and found drugs. In a subsequent search of the defendant's room, more drugs and drug paraphernalia were found. The Bureau of Indian Affairs offi-

cer who took part in the search testified that he believed that finding drugs in the defendant's pocket gave them probable cause to search his bedroom, whether or not the warrant authorized such a search.

## A SEARCH OF THE ENTIRE HOUSE PURSUANT TO THE WARRANT WAS PROPER

The state takes the position that there was probable cause for the issuance of a warrant to search the entire house, and that the defendant did not have a reasonable expectation of privacy in the room he occupied. It argues that, in any event, the officers had a good-faith belief that the warrant authorized the search of the defendant's room so that the search was valid under A.R.S. section 13–3925 (Supp.1988) and the holdings in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *State v. Papineau*, 146 Ariz. 272, 705 P.2d 949 (App.1985). The defendant counters with the argument that the warrant was based on information about David Diaz so that it could not legitimately extend to a search of the defendant's room. He also disputes whether the officers acted in good faith.

 A search warrant must describe the place to be searched with particularity. A warrant for a multiple occupancy structure will generally be held invalid if it fails to describe the subunit to be searched. 2 W. LaFave, *Search and Seizure, a Treatise on the Fourth Amendment*, § 4.5(b), at 78 (1978); Annotation, "Search Warrant: Sufficiency of Description of Apartment or Room to be Searched in Multiple–Occupancy Structure," 11 A.L.R.3d 1330 (1967). Where the entire premises, rather than a particular subunit, are under suspicion of illegal activity, a warrant for the entire residence may be valid. *State v. Coatney*, 44 Or.App. 13, 18, 604 P.2d 1269, 1272 (1980); *State v. Ellis*, 263 S.C. 12, 19, 207 S.E.2d 408, 411 (1974).

 In many instances, the officers are not aware that a building is a multiple occupancy structure until they begin their search. The constitutionality of the officers' conduct must be judged in the light of the information available to them at the time they acted. *Maryland v. Garrison* 480 U.S. 79, 85, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72, 81 (1987). This is not to say, however, that in every instance a broadly drawn warrant will authorize a wide ranging search when the officers discover that the building is a multiple occupancy structure or is divided into subunits.

The case that best explains the law as it applies here is *State v. Alexander*, 41 Wash.App. 152, 704 P.2d 618 (1985). There, officers obtained a warrant to search a house belonging to Wayne Alexander. The house appeared to be a single family residence. After they began their search, the officers realized that persons other than the person named in the warrant also lived in the house. After searching one bedroom in which they found marijuana and identification belonging to a person named Mark Hurlbet, they searched the defendant's bedroom and found L.S.D. The trial court suppressed the L.S.D., reasoning that once the officers realized that they were in a bedroom that belonged to a person who was not named in the warrant, they should have curtailed their search.

The Washington Court of Appeals reversed the trial court and in doing so discussed the law as it pertains to searches of multiple occupancy residences. It began by stating the general rule that a search warrant for a multiple occupancy building will usually be held invalid if it fails to describe the particular subunit to be searched in such a way as to preclude an indiscriminate search. The court went on to note that there are two exceptions to this rule, which it referred to as the "multiple unit" exception and the "community living unit" exception.

 The court first discussed the multiple unit exception. Quoting LaFave, it said:

(1) the multiple occupancy character of the building was not known and could not have been discovered by reasonable investigation; (2) the discovery of the multiple occupancy occurred only after the police had proceeded so far that with-

drawal would jeopardize the search; and (3) *upon discovery of the multiple occupancy, reasonable efforts were made to determine which subunit is most likely connected with the criminality under investigation and to confine the search accordingly.* (Italics ours.) LaFave, *supra,* at 80.

*Alexander,* 41 Wash.App. at 154, 704 P.2d at 620.

The community living unit exception applies where several persons occupy the premises in common, rather than individually, as where the occupants share common living quarters but have separate bedrooms. *Id.* In such a case, a single warrant describing the entire premises will justify a search of the entire premises if all the occupants of the house have access to the entire premises. *Id.* The Washington court found that under the circumstances it was presented with, the community living unit exception applied. It noted that in the case before it, the residence was not an apartment, boarding house, or other type of separately divided multiple unit building. The people who lived in the house shared the common areas, and none of the bedrooms was an independent living unit, separately labeled or separately locked. The court went on to observe that anyone who lived in the house could have concealed contraband anywhere in the house, including in the bedrooms of other people who lived there. Accordingly, it concluded that the search was legal and the contraband could be admitted in evidence.

 The search which we consider was valid under either the multiple unit exception or the community living unit exception to the general rule. Under the multiple unit exception, the police, even though they were under a duty to restrict their search to the subunit most likely connected to the crime they were investigating, were justified in searching the defendant's bedroom. First, they had been told that drugs were scattered throughout the house. So general a statement might not, alone, have been sufficient to permit a search of the defendant's bedroom. But here, the officers had much more, because they had found what

they believed to be drugs in the defendant's pants. With this added factor, it was not unreasonable for the officers to believe that there might be evidence of the crime which was the subject of the warrant in the defendant's bedroom. Accordingly, they were not required to restrict their search to Diaz's bedroom or the common areas of the house.

■ Because a common key opened both the Diaz bedroom and the defendant's, the community living unit exception also applies. Several occupants of the house shared the common areas. While at least two of the bedrooms were locked and might otherwise be identifiable as separate private space, a common key opened both bedrooms. Here, as in *Alexander,* contraband might have been hidden in the defendant's bedroom even though the defendant was not initially the prime suspect.

The warrant was valid, the search was legal, and the trial court erred in suppressing the evidence. It is ordered vacating the order of the trial court and remanding this case for further proceedings.

GRANT, C.J., and FIDEL, J., concur.