IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30593-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHNNIE LLOYD TRAUB, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — A search warrant issued for what John Traub[1] contends was a multi-dwelling residential building owned by his brother; while originally a single family home, Mr. Traub claims it was modified to include separate upstairs and basement apartments. Mr. Traub claims that he lived upstairs and that a tenant lived in the apartment downstairs.

Probable cause arose supporting a search of the basement. Mr. Traub argues that the detective applying for the warrant relied upon that probable cause to prepare a

---

[1] We refer to the defendant as "John" Traub, the name by which he identified himself at trial. We make a few references to John's brother Rick Traub hereafter, always by his full name. Our references to "Mr. Traub" will always be to the defendant, John.

misleading affidavit requesting authority to search the entire building. The warrant issued and when executed, officers discovered methamphetamine in Mr. Traub's bedroom, leading to his arrest and conviction for possession of a controlled substance.

Mr. Traub challenged both the affidavit in support of the warrant and the conduct of officers who executed it, yet the focus of the suppression hearing and the court's findings and conclusions was on execution of the warrant. Further findings and conclusions are needed to determine whether the affidavit in support of the warrant was deliberately or recklessly misleading and, if it was, whether a reformed affidavit fairly representing the information available to the applicant would have established probable cause supporting a search of the entire building. We remand for the further proceedings needed to enter those findings and conclusions.

FACTS AND PROCEDURAL BACKGROUND

Yakima County Sheriff's Deputy Christopher Stearley responded to a domestic violence call at 3291 Kays Road in Wapato in March 2011. The dispatch indicated that the alleged offender was in the basement of the residence. When Deputy Stearley arrived at the Kays Road address, he was met by Robert Ross, who told the deputies that his estranged wife Amber was in the basement and would not come out.

The door to the basement of the residence was located on its west or southwest side. Deputy Stearley tried to get Ms. Ross to come to the basement door but was unsuccessful. Mr. Traub, whose name the deputy did not obtain but who the deputy

2

believed at the time was the homeowner,[2] opened the basement door with a screwdriver. Once able to enter, Deputy Stearley and other responding deputies questioned Ms. Ross about the domestic violence complaint. The deputy determined from his conversation with Mr. Ross and Mr. Traub that Ms. Ross was not paying any rent or utilities and had no legal right to be present at the Kays Road address. He asked her to leave and, when she was only marginally cooperative, eventually escorted her out of the residence, telling her she would be arrested if she did not leave.

While in the basement, Deputy Stearley saw upwards of 16 marijuana plants. Mr. Ross had anticipated an issue over the plants and presented Deputy Stearley early on with documents ostensibly authorizing him to grow medical marijuana. Unsure of the number of plants one individual could have, Deputy Stearley contacted Robert Tucker, a detective with the local drug task force. He described what he had seen and provided Detective Tucker with the case number so that the detective could review the report that the deputy would write and file as was required for domestic violence incidents.

Detective Tucker reviewed Deputy Stearley's report and from it and other information prepared an affidavit seeking a search warrant for 3291 Kays Road. While Deputy Stearley's two-page report made eight references to having entered and

---

[2] The report stated, "It was then confirmed by the homeowner, of whom I did not have contact with and therefore did not obtain their name, that Amber was not a resident of the house and was no longer welcome there. Further investigation revealed Amber had not signed a lease, did not get her mail at the apartment and has not paid any rent or utilities in the day or two she had stayed there." Clerk's Papers at 23.

encountered Ms. Ross in a "basement apartment" or "apartment" at the Kays Road address and a few other facts arguably suggesting a multi-dwelling building, the detective's four-page affidavit in support of the search warrant did not describe 3291 Kays Road as comprising multiple units. It did not refer to any of the facts in Deputy Stearley's report suggesting that Mr. Ross lived in an apartment, separate from the portion of the building occupied by the "homeowner." It did state that "Deputy Stearley stated he did not enter or observe the entire residence, since the situation took place in the lower portion of the residence in [a] few rooms." Clerk's Papers (CP) at 16.

The warrant authorized a search of the entire building at the address, which it described as "a multi story residential home." CP at 20. Detective Tucker would later testify that he learned that a multi-story residential home was at the Kays Road address from the Yakima County geographic information services and assessor's websites. He also evidently learned from that source that the owner of the property was Rick Traub, a fact included in the search warrant. The detective's affidavit, on the other hand, did not mention Rick Traub or John Traub, stating instead that deputies responding to the domestic violence complaint "were able to determine that ROSS," who the deputy had determined was a known and convicted drug user, "resided at 3291 Kays Road." CP at 16.

When law enforcement officers executed the search warrant they entered through the residence's main level front door, which was located on its east or northeast side—the

4

opposite side of the building from the basement entrance used by the deputies who had responded to the domestic violence incident. At the time officers arrived to execute the search warrant, Mr. Traub was inside, on the main floor. He told the officers that he lived there and that his bedroom was in the northwest corner. Officers found and seized methamphetamine in Mr. Traub's bedroom.

The State charged Mr. Traub with one count of possession of a controlled substance (methamphetamine). He moved to suppress the evidence seized during the execution of the search warrant.

The parties' briefing of the suppression motion addressed two stages at which a constitutional violation can occur where the search of multiple dwellings in a residential building exceeds probable cause supporting the search of only a single dwelling. The first stage is the warrant application stage, if the affidavit in support of a search warrant, through intentional or reckless misrepresentations or omissions, implies that probable cause supports a broader search. The second stage is the warrant execution stage, if officers executing the warrant encounter evidence suggesting that the scope of the warrant is too broad.

At the hearing held on Mr. Traub's motion to suppress, the State offered a great deal of evidence relevant to the warrant execution stage. The State's evidence of the officers' good faith at the execution stage included photographs of the home taken from its main entrance side. It included evidence (disputed by Mr. Traub) that officers

executing the warrant encountered an interior door from the upstairs to the basement that was open and unsecured.

At the conclusion of the suppression hearing, the trial court denied the motion to suppress, explaining its ruling with reference to all of the evidence presented by the parties. Neither its oral ruling nor the findings and conclusions that were entered later addressed whether, focusing on only the information known to Detective Tucker in applying for the search warrant, the detective misrepresented or omitted information that was critical to the broad scope of the search warrant.

Following the suppression decision, Mr. Traub proceeded to a stipulated facts trial, where he was convicted as charged. He was sentenced to 15 days' confinement. Although he asked the trial court not to impose community custody, the court denied his request, stating its belief that it was required by law to impose a period of community custody. The judgment and sentence imposed community custody. Mr. Traub appeals.

## ANALYSIS

Mr. Traub raises only two issues on appeal. As to the second—whether the trial court erred by failing to recognize its discretion *not* to impose community custody—the State concedes error. We accept the State's concession; the trial court was not required to impose community custody. *See* RCW 9.94A.702(1)(d) (court "may" impose up to one year of community custody where offender is sentenced to a term of confinement for one year or less for a felony violation of chapter 69.50 RCW). A trial court's failure to exercise

6

discretion is an abuse of discretion. *State v. Flieger*, 91 Wn. App. 236, 242, 955 P.2d 872

(1998). If Mr. Traub's conviction stands following future proceedings, the trial court

should exercise its discretion to determine whether or not to impose community custody.

Mr. Traub's remaining assignment of error is to the trial court's denial of his

motion to suppress evidence seized in the search of 3291 Kays Road. We review a trial

court's decision on a suppression motion for an abuse of discretion. *See State v.*

*Wittenbarger*, 124 Wn.2d 467, 490, 880 P.2d 517 (1994). "A trial court abuses its

discretion only when its decision is manifestly unreasonable or is based on untenable

reasons or grounds." *State v. C.J.*, 148 Wn.2d 672, 686, 63 P.3d 765 (2003) (citing *State*

*v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)).

In reviewing a suppression decision, unchallenged findings of fact are treated as

verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Mr. Traub

does not assign error to any of the trial court's findings, which we treat as verities. We

engage in de novo review of conclusions of law to which error is assigned. *State v.*

*Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Mr. Traub assigns error to five of

the trial court's conclusions of law.[3]

---

[3] He assigns error to conclusions 1 ("There was sufficient probable cause for the issuance of the search warrant in this case."), 5 ("The search of the residence was not beyond the scope permitted."), 6 ("The search of the upper level of the residence was not excessive."), 7 ("The observations of the officers executing the search warrant did not indicate that the residence was a multi-unit residence."), and 8 ("Nothing indicated that the use of the premises was restricted to certain residents of the home. Nothing alerted the officers that there were separate residences within the home."). Br. of Appellant at 1.

No. 30593-7-III
*State v. Traub*

*Probable cause must exist for searching
the entire premises covered by a search warrant.*

Since at least 1918, federal statutes have required search warrants to be supported

by a signed affidavit specifically setting forth the facts comprising probable cause. *State*

*v. Chenoweth*, 160 Wn.2d 454, 467, 158 P.3d 595 (2007) (citing *Byars v. United States*,

273 U.S. 28, 29, 47 S. Ct. 248, 71 L. Ed. 520 (1927)). Washington law has required

either a signed affidavit or a contemporaneous record of the basis for a magistrate's

probable cause determination since CrR 2.3 was adopted in 1973. The sworn testimony

to support the warrant must state the underlying facts and circumstances on which it is

based in order to facilitate a detached and independent evaluation of the evidence by the

issuing magistrate. *State v. Smith*, 93 Wn.2d 329, 352, 610 P.2d 869 (1980).

"The oath requirement [of the Fourth Amendment[4]] 'takes the affiant's good faith

as its premise,'" and "implicitly protects [a defendant] from reckless or deliberate

fabrication of the factual allegations comprising probable cause." *Chenoweth*, 160

Wn.2d at 471 (quoting *Franks v. Delaware*, 438 U.S. 154, 164, 98 S. Ct. 2674, 57 L. Ed.

2d 667 (1978)). Under both the Fourth Amendment and article 1, section 7 of the

Washington Constitution, factual inaccuracies or omissions in a warrant affidavit may

invalidate the warrant if the defendant establishes that they are material and made in

---

[4] The warrants clause of the Fourth Amendment provides, "no warrants shall issue,
but upon probable cause, supported by oath or affirmation." U.S. CONST. amend. IV.

8

reckless disregard for the truth. *Franks*, 438 U.S. at 155-56; *State v. Seagull*, 95 Wn.2d 898, 908, 632 P.2d 44 (1981).

Mr. Traub contends that Detective Tucker's affidavit contained inaccuracies or omissions suggesting a broader scope for searching the Kays Road residence than was supported by probable cause. Probable cause for a warrant exists if the affidavit in support sets forth facts and circumstances sufficient to establish both a reasonable inference that the defendant is probably involved in criminal activity and—critical here—that evidence of the crime can be found at the place to be searched. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999).

The requirement of a nexus between the evidence of crime reasonably expected to be found and the place to be searched has special application in the case of multi-dwelling residential buildings. A warrant for a multi-dwelling residence will typically be held invalid as not sufficiently particular if it fails to describe the dwelling unit or units to be searched with sufficient definiteness to prevent an indiscriminate search extending to other units. *State v. Alexander*, 41 Wn. App. 152, 153-54, 704 P.2d 618 (1985); *United States v. Higgins*, 428 F.2d 232, 235 (7th Cir. 1970) ("'For purposes of satisfying the Fourth Amendment, searching two or more apartments in the same building is no different than searching two or more completely separate houses. Probable cause must be shown for searching each.'" (quoting *United States v. Hinton*, 219 F.2d 324, 325 (7th Cir. 1955))). Mr. Traub argues that the information known to Detective Tucker at the time he

9

prepared his affidavit provided probable cause for searching only Mr. Ross's basement apartment, not the entire residential building.

There are two recognized exceptions to the general rule invalidating an overbroad warrant to search a multi-dwelling residential building: the "multiple unit" exception and the "community living unit" exception. *Alexander*, 41 Wn. App. at 154. Even if the building proves to include multiple dwelling units, the warrant will be found valid if one of the two exceptions apply. *Id.*

Under the "multiple unit exception," if a building appears to be a single family residence and neither the affiant nor the investigating or executing officers knew or had reason to know of the building's actual multi-dwelling character until execution of the warrant was under way, the warrant is not defective for failure to specify a dwelling. *Id.* In upholding such searches, courts have required that, upon discovery of multiple occupancy, reasonable efforts be made to limit the search to the dwelling most likely connected to the criminal activity identified in the warrant. *Id.*

The "community living unit" exception applies where several individuals or families occupy the building in common rather than individually, such as where they share common living quarters but have separate bedrooms. *Id.* at 154-55. In the community living unit context, the courts have held that a single warrant describing the entire building is valid and justifies a search of the entire premises. *Id.* at 155.

In light of this authority, two bases for suppression were presented by Mr. Traub's motion and the evidence presented by the parties at the suppression hearing, which we address separately.

Maryland v. Garrison *challenge to execution of the warrant.*

In defending against the motion to suppress, the State placed substantial reliance on *Maryland v. Garrison*, 480 U.S. 79, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987). In that case, officers executed a warrant authorizing them to search "'the premises known as 2036 Park Avenue third floor apartment,'" reasonably believing at the time they applied for the warrant and conducted the search that there was only one apartment located on the third floor at that address. 480 U.S. at 80. In fact, there were two apartments on the third floor, occupied by different residents. Before the officers became aware of that fact, however, they had discovered the contraband that they later sought to offer at trial. Lower courts reviewing the defendant's challenge to the search warrant found that the State had made no misrepresentation or omission in the process of applying for the warrant and that it was validly issued. The Supreme Court agreed.

Relevant here, a second question addressed in *Garrison* was whether the *execution of the warrant* violated the defendant's constitutional right to be secure in his home. The Court held that "as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit

11

erroneously included within the terms of the warrant." *Id.* at 87. The Court found no constitutional violation in the execution of the warrant, however, because the officers acted in good faith based upon the warrant up until they discovered the contraband and for some time thereafter. "[T]he officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." *Id.* at 88.

In the suppression hearing below, the State relied upon this second holding of *Garrison* and focused much of its evidence and argument on what it argued was the good faith conduct of the officers who executed the warrant. The trial court's findings and conclusions largely address facts bearing on the constitutionality of the conduct of officers executing the warrant. Mr. Traub does not argue on appeal that the State violated his constitutional rights in the process of executing the warrant.[5]

Franks v. Delaware *challenge to the search warrant application.*

Mr. Traub's other basis for suppression was that the warrant itself was invalid under *Franks* and *Seagull*, because Detective Tucker's affidavit included factual inaccuracies or omissions that were material and made in reckless disregard for the truth. For purposes of this sort of challenge, the proper procedure is to conduct what we have come to refer to as a *Franks* hearing.

---

[5] Some of the conclusions of law to which Mr. Traub assigns error relate to the officers' conduct in executing the warrant, but his legal argument does not challenge the execution of the warrant.

12

We begin with the presumption that the affidavit supporting a search warrant is valid. *State v. Atchley*, 142 Wn. App. 147, 157, 173 P.3d 323 (2007). To be entitled to a *Franks* hearing, a defendant must make a substantial preliminary showing that the affidavit includes deliberate or reckless inaccuracies or omissions. "If the defendant makes this preliminary showing, and at an evidentiary hearing establishes the allegations by a preponderance of the evidence, the material misrepresentation will be stricken from the affidavit and a determination made whether, as modified, the affidavit supports a finding of probable cause." *Chenoweth*, 160 Wn.2d at 469. The *Franks* test for material misrepresentations also applies to allegations of material omissions. *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985). If the affidavit, reformed to correct material inaccuracies or omissions, fails to support probable cause, the warrant will be held void and evidence obtained pursuant to it will be excluded. *Chenoweth*, 160 Wn.2d at 469.

The *Franks* hearing procedure was not followed in the trial court. Instead, the court conducted a single evidentiary hearing on Mr. Traub's motion to suppress. This would not be a problem if the court had been able to adapt the combined hearing to undertake the analysis required by *Franks* and *Seagull*. Here, though, the court's findings and conclusions do not resolve the issues that control the *Franks* challenge.

Without suggesting the findings and conclusions that the trial court should reach, we conclude that the trial court could find that Mr. Traub made the required showings of reckless representations or omissions having an impact on the proper scope of probable

13

cause, depending on its assessment of credibility and the weight it attaches to the evidence. As argued by Mr. Traub, Deputy Stearley's report suggested that from the time he and other officers received the first report of the domestic violence incident from dispatch, they knew they were responding to an apartment. The first four sentences of Deputy Stearley's report state:

> On 3-19-2011 I was dispatched to 3291 Kays Road with the report of a domestic violence malicious mischief. Dispatch advised that Amber Ross had broken out a window at the above stated address *and was currently sitting in the down stairs apartment.*
> Upon arrival I met with Robert Ross who stated he was Amber's husband. Robert further stated he had arrived home to find Amber had smashed out the front windshield of a truck he had purchased *and was currently in the basement apartment* and would not open the door.

CP at 23. The remainder of Deputy Stearley's two-page report referred to Mr. Ross's residence as an "apartment" six more times.[6]

In addition to its references to an apartment, the report recounted the fact—anomalous, if this were a single family residence—that "after several attempts to get Amber to come to the door, the owner of the house managed to open the [exterior basement] door with a screwdriver." CP at 23.

---

[6] "Once inside the basement apartment I found Amber"; "Further investigation revealed Amber had not signed a lease, did not get her mail at the apartment"; "Amber . . . continued to walk about the apartment at random"; "Amber ran back into the apartment, after being told she could not go back in"; "[Amber] pick[ed] up a item she had dropped while stating she was going to go back into the apartment"; and "During the attempt to remove her from the apartment." CP at 23-24.

14

Detective Tucker's affidavit in support of the search warrant appears to have been based upon a painstaking review of Deputy Stearley's report. Given the evident care with which the deputy's report was reviewed, the question arises whether the detective's selection of which details to include or exclude was his good faith assessment of their relevance to probable cause or, instead, the prospect that particular details would enhance or might undercut probable cause for the broadest possible search.

In determining the existence of probable cause under *Franks*, Washington has rejected the position taken by some federal courts[7] that the trial court can infer recklessness from the omission of facts clearly critical to a finding of probable cause; in *State v. Garrison*, our Supreme Court adopted the view of the Fourth Circuit that to do so "'[would collapse] into a single inquiry the two elements—"intentionality" and "materiality"—which *Franks* states are independently necessary.'" *State v. Garrison*, 118 Wn.2d 870, 873, 827 P.2d 1388 (1992) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)). On the other hand, the intent with which an act is done is rarely susceptible of proof by direct evidence; generally, the evidence must be of a circumstantial character with intent or recklessness inferred from the acts and conduct of the actor. *State v. Savage*, 94 Wn.2d 569, 587, 618 P.2d 82 (1980); *State v. Kennedy*, 19 Wn.2d 152, 158, 142 P.2d 247 (1943).

---

[7] *E.g.*, *United States v. Gifford*, 727 F.3d 92, 98-99 (1st Cir. 2013).

As pointed out in *United States v. Tate*, which specifically addressed the trial court's task where a *Franks* challenge is based on omissions,

> an affidavit offered to procure a search warrant "cannot be expected to include . . . every piece of information gathered in the course of an investigation." And because every piece of information cannot be expected to be included, the very process of selecting facts to include for the demonstration of probable cause must also be a deliberate process of omitting pieces of information. Certainly, such intentional omissions do not satisfy the requirement of *Franks*. . . .
>     To satisfy the *Franks*' intentional or reckless falsity requirement for an *omission*, the defendant must show that facts were omitted "with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." Stated otherwise, the omission must be *"designed to mislead"* or must be made "in *reckless disregard of whether [it] would mislead.*"

524 F.3d 449, 455 (4th Cir. 2008) (first and third alterations in original) (citations omitted) (quoting *Colkley*, 899 F.2d at 300, 301).

The determinations required by *Franks* are properly made by the trial court. We therefore decline to grant the remedy requested by Mr. Traub, which was that we draw our own conclusion that the methamphetamine found in Mr. Traub's bedroom should have been suppressed and reverse his conviction. We instead exercise our discretion to "take any other action as the merits of the case and the interest of justice may require" and remand for the trial judge's determination of the matters required by *Franks*. RAP 12.2; *see* RAP 12.3(b). In making that determination, the trial court should limit its consideration of evidence to the information available to Detective Tucker at the time he prepared his affidavit in support of the search warrant, disregarding the evidence of later

16

events presented at the earlier suppression hearing. We leave it to the trial court's discretion whether to take additional evidence in light of the passage of time or the nature of the determinations to be made.

We retain jurisdiction and remand for the trial judge to make the determinations required by *Franks*. In future proceedings, the trial court should also exercise its discretion whether to order community custody. The parties may (but need not) file supplemental briefing addressing the issue of the validity of the search warrant in light of the determinations to be entered by the court.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Fearing, J.

17